Not Reported in F.Supp.2d
(Cite as: 2003 WL 223212 (S.D.N.Y.))

Page 13

Only the Westlaw citation is currently available.

United States District Court,
S.D. New York.

UNITED STATES OF AMERICA,
v.
Barbara Renor JASPER, Defendant.

No. 00 CR. 825(PKL).

Jan. 31, 2003.

Government moved to compel defendant, charged with embezzlement from credit union, to produce summary of proposed expert testimony and items intended for use in trial, after government produced reciprocal information for defendant. The District Court, Leisure, J., held that production was required.

Order accordingly.

[1] Criminal Law ⬅629(11)

110k629(11)

Defendant charged with embezzlement from credit union was required to provide government with written summary of testimony of proposed expert witness, after government submitted summary of its expert's testimony, despite claim that decision had not yet been made whether defendant's expert would testify. Fed. Rules Crim. Proc., Rule 16(b)(1)(C).

[2] Criminal Law ⬅627.6(2)
110k627.6(2)

Defendant charged with embezzlement by credit union employee was required to produce tangible objects it intended to use at trial, after government produced materials it intended to use. Fed. Rules Crim. Proc., Rule 16(b)(1)(A).

MEMORANDUM ORDER

LEISURE, J.

*1 The indictment charges defendant Barbara Renor Jasper ("Jasper") with one count of embezzlement by a credit union employee, alleging that between 1997 and May 15, 2000, Jasper took more that $500,000 from Automated Teller Machines ("ATMs") while performing routine replenishments of these ATMs, in violation of 18 U.S.C. § 657. The government now requests that the Court order defendant to produce pretrial discovery to the government in accordance with Rule 16 of the Federal Rules of Criminal Procedure. Specifically, the government requests that the Court order defendant to produce reciprocal discovery regarding any expert testimony that the defendant intends to use at trial, in accordance with Rule 16(b)(1)(C). The government also requests that the Court order defendant to produce any materials within defendant's possession, custody or control, and which defendant intends to use in her case-in-chief at trial, in accordance with defendant's reciprocal discovery obligations as set forth in Rule 16(b)(1)(A). For the reasons set forth below, the government's request is granted in its entirety.

BACKGROUND

The indictment in this case alleges that between 1997 and May 15, 2000, defendant stole funds from ATMs located at a branch of the United Nations Federal Credit Union ("Credit Union"), where Jasper was employed as the branch manager. *See* Indictment of Barbara Renor Jasper, 00 Cr. 825. In order to replenish the ATMs, Credit Union employees removed the cash remaining in the machines and added new supplies of cash. The Indictment alleges that Jasper stole money on various occasions during these routine replenishments of the ATMs by under-reporting the amounts that she actually removed from the ATMs, and stealing the difference between what she had actually removed and what she had reported as having remained in the machines. *Id.* After the indictment was returned, defendant's counsel, Roger B. Adler, Esq, requested and the government agreed to produce the discovery materials to which the defendant was entitled under Rule 16(a). The Assistant United States Attorneys prosecuting this case, Daniel A. Braun, Esq., and Andrew L. Fish, Esq., have informed the Court that over the course of the litigation, Mr. Adler has periodically asked the government to obtain and produce additional records from the Credit Union and other entities, and that to the extent possible, the government has complied with these requests. *See* Letter to the Court from Mr. Braun and Mr. Fish, dated January 6, 2003 ("Jan. 6 Letter"), at 2. On April 12, 2001, Mr. Adler submitted a motion for a bill of particulars and for additional pretrial discovery, including discovery relating to any expert testimony on which the government intended to rely. The Honorable Lawrence M. McKenna, United State District Court Judge of this Court, to whom this case was originally assigned, granted defendant's motion in part and denied it in part, requiring the government to supply defendant

Not Reported in F.Supp.2d
(Cite as: 2003 WL 223212, *1 (S.D.N.Y.))

Page 14

with a bill of particulars, [FN1] but denying defendant's request that the Court order the government to produce additional discovery materials, finding that, "the government had acknowledged its obligations in this regard [pursuant to Rule 16], and has not been shown to have failed to comply with those obligations." *United States v. Jasper*, No. 00 Cr. 825, 2001 U.S. Dist. LEXIS 6679, *2 (S.D.N.Y. May 10, 2001)(McKenna, J.). Furthermore, the Court ordered the government to provide a summary of any expert testimony that it intended to offer at trial, as required by Rule 16(a)(1)(E), no later than 14 days prior to trial. *Id.*

> FN1. The Court directed the government to supply defendant with information regarding the precise dates on which the government alleges that defendant stole funds from the Credit Union; the identity of the ATM machines from which the cash shortages were discovered; and the approximate amount of cash allegedly taken on each of the dates identified. *United States v. Jasper*, No. 00 Cr. 825, 2001 U.S. Dist. LEXIS 6679, *1 (S.D.N.Y. May 10, 2001).

*2 The trial date for this case has been adjourned on several occasions, in part because of the Court's other trial commitments and in part to ensure that Mr. Adler had enough time to review the additional evidence necessary to prepare the defense. Both parties consented to these adjournments. In considering new trial dates, Mr. Adler informed the Court and the government that, in order to confirm his availability, he would first need to confirm the availability of the expert witness whom he had retained. *See* Jan. 6 Letter at 3. The Government learned the identity of defendant's expert witness, John Burdiss, on November 18, 2002, when he visited the U.S. Attorney's Office with Mr. Adler to review documents that had been produced by the government. *Id.* The government helped Mr. Burdiss identify materials with which he was not familiar, and has made its best effort to answer what additional questions Mr. Burdiss has posed since his November 18, 2002 visit. *Id.* at 4. In response to the government's request for the curriculum vitae ("C.V.") of defendant's expert witness and a written summary of his proposed testimony in accordance with defendant's obligations under Rule 16(b)(1)(C), Mr. Adler sent the government a letter dated January 3, 2003, in which he produced a C.V. for Mr. Burdiss, but did not produce any other discovery relating to Mr. Burdiss' prospective testimony. *See* Letter from Mr. Adler to Mr. Braun, dated January 3, 2003 ("Jan. 3 Letter"). Mr. Adler stated that he did not produce any report regarding Mr. Burdiss' expert testimony because there was presently no written report relating to Mr. Burdiss' activities, and Mr. Adler had not, as yet, determined if Mr. Burdiss would be testifying at trial. *Id.* In that same letter, Mr. Adler requested a C.V. for Herbert Benton, a Certified Public Accountant ("C.P.A.") whom the government had identified to defense counsel as a possible witness at trial. [FN2] *Id.* The government has produced Mr. Benton's C.V., and has directed Mr. Adler to reports that had been prepared by Mr. Benton and his firm, which had already been produced in discovery, and which provide a detailed summary of Mr. Benton's conclusions and the bases for those conclusions.

> FN2. While the government views Mr. Benton as a prospective fact witness, the government has nevertheless treated him as a potential expert witness in producing discovery because his testimony could be based, in part, on his work and experience as an accountant. *See* Jan. 6 Letter at 4.

Mr. Adler informs the Court that he has consulted with Mr. Burdiss to assist in the trial preparation, and he has not determined at this time "whether Mr. Burdiss' status will change from out of court consultant to that of in court expert." *See* Letter from Mr. Adler to the Court, dated January 16, 2003 ("Jan. 16 Letter"), at 2. Thus far, Mr. Adler has not produced a summary of Mr. Burdiss's prospective testimony, or any other discovery materials that he intends to use at trial.

DISCUSSION

I. Defendant's Reciprocal Discovery Obligations Under Rule 16(b)(1)(C)

[1] Rule 16(b)(1)(C) provides:
> If a defendant requests disclosure under Rule 16(a)(1)(G) [relating to government obligation to provide a written summary of any expert testimony that it intends to use in its case-in-chief] and the government complies, the defendant must give the government, upon request, a written summary of any testimony the defendant intends to use as evidence at trial under Federal Rules of Evidence 702, 703, or 705. The summary must describe the witness's opinions, the bases and reasons for these opinions, and the witness's qualifications.

*3 Fed.R.Crim.P. 16(b)(1)(C). The mutual obligation to provide pretrial discovery regarding expert testimony was added by the 1993 Amendment to Rule 16. The Advisory Committee explained that the intent of the amendment expanding federal criminal discovery obligations was "to minimize surprise that

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works

Not Reported in F.Supp.2d
(Cite as: 2003 WL 223212, *3 (S.D.N.Y.))

Page 15

often results from unexpected expert testimony, reduce the need for continuances, and to provide the opponent with a fair opportunity to test the merits of the expert's testimony through focused cross-examination." Fed.R.Crim.P. 16, Advisory Committee Notes, 1993 Amendment ("Rule 16 Adv. Comm. Notes, 1993 Am."). The Advisory Committee further explained that the provision of a summary of the expected testimony was intended "to permit more complete pretrial preparation by the requesting party. For example, this should inform the requesting party whether the expert will be providing only background information on a particular issue or whether the witness will actually offer an opinion." *Id.* However, the Advisory Committee emphasized that the most important aspect of this mutual discovery obligation is the provision of a summary of the bases of the expert's opinion. *Id.* Therefore, the summary required pursuant to Rule 16(a)(1)(G) and Rule 16(b)(1)(C) should cover "not only written and oral reports, tests, reports and investigations, but any information that might be recognized as a legitimate basis for an opinion under Federal Rule of Evidence 703, including opinions of other experts." [FN3] *Id.*

> FN3. Several courts have read the "written summary" requirement of Rule 16(b)(1)(C) broadly, particularly when it comes to the description of the bases and reasons for the expert's opinion. *See United States v. Sturman*, No. 96 Cr. 318, 1998 WL 126066 (S.D.N.Y. Mar.20, 1998) (holding that a general description of the possible bases for defendant's expert opinion was insufficient to meet the requirements of Rule 16, and ordering that defendant provide a written description of additional information regarding the bases of defendant's expert opinion); *United States v. Sourlis*, 953 F.Supp. 568, 581 (D.N.J.1996) (ordering that defendants produce additional information regarding defendant's polygraph expert's proposed testimony in accordance with defendants' discovery obligations under Rule 16(b)(1)(C)).

Defendant's counsel informs the Court that there is no written report relating to Mr. Burdiss' observations and findings under counsel's custody or control since Mr. Burdiss has prepared no such report thus far. [FN4] *See* Jan 16 Letter at 2. Consequently, Mr. Adler makes the axiomatic argument that the defense cannot produce a written report that does not currently exist. *Id.* In support of this position, Mr. Adler cites *United States v. Johnson*, 713 F.2d 654, 659 (11th Cir.1983) (holding that Rule 16 did not require the government to disclose the identity of its **expert witness** where the witness has not prepared any reports). However, the Advisory Committee Notes accompanying the 1993 Amendment to Rule 16, which expands the **reciprocal** obligation to provide pretrial **discovery**, makes clear that the requirement to produce a summary of the expected testimony and the bases of the expert's opinion applies regardless of whether any formal written reports have been prepared. *See* Rule 16, Adv. Comm. Notes, 1993 Am ("[T]he fact that no formal written reports have been made does not necessarily mean that an expert will not testify at trial."). In fact, the Advisory Committee explicitly addresses the decision in *Johnson*, and states that "the amendment [1993 Amendment to Rule 16] should remedy that problem [i.e. the situation where the provision of expert **discovery** is not required simply because no reports have been prepared]." *Id.*

> FN4. By making reference to documents under his custody and control, defendant's counsel seems to be confusing two of his reciprocal discovery obligations under Rule 16. Under Rule 16(b)(1)(A), if defendant requests disclosure from the government under Rule 16(a)(1)(E), then upon compliance with a similar request by the government, defendant is required to permit the government to inspect and copy or photograph documents and tangible objects which are "within the possession, custody or control of the defendant and which the defendant intends to introduce at trial." Fed.R.Civ.P. 16(b)(1)(A). Therefore, if Mr. Burdiss had prepared a written report and defendant did intend to use it in her case-in-chief, then defendant would have to produce such a report pursuant to her obligations under Rule 16(b)(1)(A). However, the existence or non-existence of such a report does not impact upon defendant's obligation, pursuant to Rule 16(b)(1)(C), to provide a written summary of any expert testimony that defendant intends to use as evidence at trial.

*4 Defendant's counsel further argues that the defendant is under no obligation to provide any discovery or a written summary regarding Mr. Burdiss' testimony until defendant's counsel decides that Mr. Burdiss' role will change from being that of a <u>consultant for the defendant to that of an expert witness testifying at trial</u>. Therefore, Mr. Adler argues that the government's request for discovery regarding defendant's expert is "legally premature." Jan. 16 Letter at 2. Given Mr. Adler's indications to the Court that the defense may use Mr. Burdiss' testimony and the prejudice that would likely result from the defense's

Not Reported in F.Supp.2d
(Cite as: 2003 WL 223212, *4 (S.D.N.Y.))

Page 16

delay in adhering to its discovery obligations under Rule 16(b)(1)(C), the Court finds that the government's request for discovery relating to defendant's expert is not premature.

Rule 16(b)(1)(C) mandates that "the defendant give the government, upon request, a written summary of any testimony that the defendant intends to *use* at trial under Federal Rules of Evidence 702, 703, or 705." Fed.R.Civ.P. 16(b)(1)(C) (emphasis added). Mindful of the fact that defendant is not required to provide a written summary of expert testimony that defendant does not intend to use at trial, the Court must bear in mind the objectives behind Rule 16's provision for **reciprocal discovery** obligations- i.e. "to provide the opponent with a fair opportunity to test the merits of the expert's testimony through focused cross-examination" and "to permit more complete pretrial preparation"-in determining the nature of defendant's **discovery** obligations under Rule 16(b)(1)(C). Rule 16 Adv. Comm. Notes, 1993 Am. Allowing defendant to defer the provision of such **discovery** until a final determination regarding whether or not put an **expert witness** on the stand would seem to frustrate the achievement of these two goals.

In *United States v. Ryan*, 448 F.Supp. 810 (S.D.N.Y.1978), defendant's counsel had not made the strategic determination of whether or not defendant would testify as a witness, and as such, defendant's counsel refused to produce certain documents to the government, which he planned to introduce only on direct examination of defendant. However, the Court held that "while the refusal to testify is constitutionally protected, the trial strategy determination is not so protected. Since the defendant had availed himself of the strategy to obtain **discovery** of the government, he must comply with the requirement for **reciprocal discovery**." *Id.* at 811. While the Court acknowledged that there were Fifth Amendment right against self-incrimination issues at stake in that case, which are not at issue in the case at bar, the Court found the alternative of not requiring defendant's counsel to turn over material until he decided whether or not defendant would take the stand, to be unacceptable, since the government would almost certainly be prejudiced by the insufficient time it would have to prepare its rebuttal. The same prejudice would likely result here if defendant's counsel does not adhere to defendant's obligations under Rule 16(b)(1)(C) until defendant's counsel makes the strategic determination of whether to call Mr. Burdiss as an **expert witness**.

*5 While Mr. Adler states that he has not presently determined whether Mr. Burdiss' status will change from "out of court consultant to that of in court expert," Jan. 16 Letter at 2, the Court notes that there is a strong possibility, if not probability, that defendant will use the testimony of Mr. Burdiss at trial. [FN5] In his letter to the Court dated January 6, 2003, Mr. Adler argues that without the immediate production of additional detailed background material regarding the possible testimony of Mr. Benton, [FN6] the defense will be deprived of "a fair and meaningful opportunity to properly prepare" for cross-examination and trial. Letter to the Court from Mr. Adler, dated January 6, 2003 (Jan. 6 Letter), at 4. It is precisely these considerations that the defense must be mindful of in delivering to the government Rule 16(b)(1)(C) material regarding Mr. Burdiss. Given the given the clear possibility that Mr. Burdiss will testify, notwithstanding Mr. Adler's strategic considerations of whether or not to have Mr. Burdiss testify, the Court orders defendant to produce the written summary of Mr. Burdiss' testimony so as to avoid causing any sort of similar prejudice to the government. Furthermore, defendant should be aware that the failure or delay in producing the written summary of an expert's testimony that defendant intends to use at trial has resulted in the preclusion of such evidence at trial. [FN7] Moreover, as the Mr. Adler noted in his letter of January 6, 2003, the production of Rule 16(b)(1)(C) material needs to be made available in enough time to allow the other party to review the documents and prepare a focused cross-examination of the expert. *See* Jan. 6 Letter at 4 ("To delay the production [of additional background material regarding government's potential **expert witness**] will deprive the defense of a fair and meaningful opportunity to properly prepare for trial- and will create a 'trial by ambush' atmosphere ..."). The Court finds that the government is entitled to **reciprocal discovery** under Rule 16, in order to ensure that the government will be able to prepare a "focused cross-examination" of defendant's expert testimony-just as the defense has been able to use the summary provided by the government in preparing a "focused cross-examination" of the government's **expert witness**. *See* Rule 16 Adv. Comm. Notes, 1993 Am.

> FN5. The Court notes that defendant's counsel has indicated on several prior occasions to the government and to the Court that there is a distinct possibility that defendant will use Mr. Burdiss' testimony as evidence at trial, both by informing the Court that he [Mr. Adler] would need to check on Mr. Burdiss' availability in choosing a trial date, and by having Mr. Burdiss examine documents at the U.S. Attorney's Office and make inquiries of

Not Reported in F.Supp.2d                                                                                                   Page 17
(Cite as: 2003 WL 223212, *5 (S.D.N.Y.))

the prosecutors involved with this case.

> FN6. The government has already directed the defense to reports prepared by Mr. Benton, which were produced in discovery, and which provide a detailed summary of his conclusions and the bases for those conclusions. *See supra* note 2.

> FN7. The Court notes that failure to provide discovery mandated under Rule 16 may result in a waiver of defendant's right to introduce such evidence at trial. See Rule 16(d)(2)(C); *United States v. Libutti*, No. 92 Cr. 611, 1994 WL 774646, *1 (D.N.J. Feb.8, 1994) (in light of defendant's failure to make a sufficient proffer consistent with Rule 16(b)(1)(C) at the initial hearing on the matter, i.e. failing to provide a C.V. of proposed experts accompanied by a written summary of proposed expert testimony and bases therefore, the defense was precluded from mentioning the compulsive gambling theory and the proposed expert testimony in the opening statement.); *United States v. Goguen*, 723 F.2d 1012 (1st Cir.1983) (holding that trial court did not err in perjury prosecution when court excluded expert testimony concerning defendant's poor memory and low intelligence, where defendant did not disclose the evidence until the third day of trial, and did not give requisite notice).

With the trial date only a week away, it is reasonable to expect that the defense has made a determination regarding their intent to use the testimony of Mr. Burdiss. Therefore, if defendant does intend to use Mr. Burdiss' testimony at trial, the Court orders defendant to provide the government with the written summary of that testimony required under Rule 16(b)(1)(C) forthwith. If defendant has decided not to use Mr. Burdiss' testimony at trial, then clearly, no summary report need be produced.

II. Defendant's Reciprocal Discovery Obligations Under Rule 16(b)(1)(A)

[2] Rule 16 (b)(1)(A) provides:
  *6 If the defendant requests disclosure under subdivision (a)(1)(E) [request for government production of documents or tangible objects which are within the control of the government, which the government intends to use in its case-in-chief at trial, or which were obtained from or belong to the defendant] and the government complies, then the defendant must permit the government, upon request, to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items if: (i) the item is within the defendant's possession, custody or control; and (ii) the defendant intends use the item in the defendant's case-in-chief at the trial.

Fed.R.Civ.P. 16(b)(1)(A). The government represents that it has complied with its discovery obligations under Rule 16(a)(1)(E) by, upon defendant's request, producing discovery materials after the indictment was returned in mid-2000, producing records of the Credit Union and other entities when they were requested by defendant, producing additional discovery materials on a continuing basis, pursuant to Rule 16(c), and producing a bill of particulars to defendant at the instruction of the Court. *See* Jan. 6 Letter at 2-3. In contrast, the government informs the Court that defendant's counsel has not responded to the government's request for the production of materials that defendant intends to introduce as evidence in the case-in-chief at the trial. *Id.* at 4. Mr. Adler does not address the government's request in his response to the government's January 6, 2002 letter requesting that the Court order defendant to comply with the reciprocal discovery obligations of Rule 16. Notwithstanding that, this Court adheres to the principal that "[t]he government's voluntary turnover of desired material to defendant must have been deemed to have been based upon the implied condition that the defense would reciprocate, if necessary, at a later date." *United States v. Estremera*, 531 F.2d 1103, 1113 (2d Cir.1976), and therefore grants the government's request and orders defendant's counsel to comply with his obligations as set forth in Rule 16(b)(1)(A) and produce any materials that he intends to use in defendant's case-in-chief at trial. [FN8]

> FN8. Defendant's failure to produce documents to the government, which defendant intends to use in the case-in-chief at trial, may result in the exclusion of such evidence at trial. *See United States v. Weiss*, 930 F.2d 185, 199 (2d Cir.1991) (finding that district court's exclusion of defendant's evidence which was not produced to the prosecution in advance of trial, despite earlier government requests for the documents, was not an abuse of discretion since permitting the defense to use the documents without the prosecution ever having seen them would have given the defense an unfair advantage).

CONCLUSION

For the reasons set forth above, the government's request that the Court order the defendant to produce

Not Reported in F.Supp.2d
(Cite as: 2003 WL 223212, *6 (S.D.N.Y.))

Page 18

discovery materials in accordance with her reciprocal discovery obligations as set forth in Rules 16(b)(1)(C) and 16(b)(1)(A) is GRANTED; and the defendant is HEREBY ORDERED to produce to the government (1) a written summary of any testimony the defendant intends to use as evidence at trial under Federal Rules of Evidence 702, 703, or 705, and (2) any books, papers, data or documents within the defendant's control and which the defendant intends to use in her case-in-chief at trial. [FN8]

FN8. The Court will inquire as to the status of this production at the pre-trial conference on Monday February 3, 2003.

SO ORDERED.

2003 WL 223212 (S.D.N.Y.)

END OF DOCUMENT

Copr. © West 2004 No Claim to Orig. U.S. Govt. Works