IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Case No. 03-cr-00249-WYD-1

UNITED STATES OF AMERICA,

    Plaintiff,

v.

1. MICHAEL KEBLES,

    Defendant.

---

**GOVERNMENT'S AMENDED RESPONSE TO DEFENDANT'S PROFFER
RE DURESS DEFENSE AND MOTION *IN LIMINE*
TO PRECLUDE DEFENDANT FROM RECEIVING SUCH A
JURY INSTRUCTION AS A MATTER OF LAW**

---

     The United States of America, by and through its undersigned Assistant United States Attorney for the District of Colorado, hereby respectfully files its amended response in opposition and moves *in limine* to preclude the defendant from arguing the affirmative defense of duress as defendant's proffer fails to establish this defense as a matter of law, showing unto the Court as follows:

**FACTUAL SUMMARY**

    1.    In this case, the Government's evidence will on establish that on three occasions, January 14, 2003, February 11, 2003, and April 2, 2003, this defendant sold quantities of MDMA or Ecstasy to the Government's informant in this case, Robert Wilson. These sales were for approximately 100, 301 and 200 pills, respectively, for a total of 601 pills. The total purchase price for these three purchases was $9,100 in official

      authorized funds (OAF), resulting in an average price per pill of $15.14. Thereafter, on May 28, 2003, agents executed a search warrant at defendant Kebles' Denver residence, recovering approximately 70 MDMA pills, other personal use quantities of drugs and paraphernalia, a loaded .357 caliber revolver, approximately $1,439.00 in United States Currency, and other items of evidence in this case.

2. The serial numbers of the $9,100 in OAF were recorded prior to the controlled purchases and that none of these funds were included in the $1,439 in U.S. currency recovered from this defendant's residence on May 28, 2003. The Government would note that the three controlled purchases of MDMA occurred over nearly a 3-month period of time.

3. Finally, in terms of the chronology of this case and the alleged affirmative defendant, the Government would point out that although defendant Michael Kebles was arrested on or about May 28, 2003, the first allegations as to duress did not occur until October 19, 2005, or nearly 2 ½ years after his arrest in this case.

4. In response to defendant's proffer, the Government observed that defendant Kebles, in pages 2 through 4 of his proffer, has numerous verbatim "quotes" from numerous alleged telephone calls. To the Government's knowledge, none of these conversations were recorded. In the alternative, and if they were, the Government has not been provided with copies of these recorded conversations.   If these quotations are from recorded conversations, the Government would demand production of

        these recordings pursuant to the defendant's Rule 16, Fed. R. Crim. P., reciprocal discovery obligations.  If the conversations were not recorded as it appears from context, the Government respectfully submits that these alleged quotes are nothing more than this defendant's self-serving "recollection" of non-existent telephone conversations.

5. Regarding further and continuing allegations against the informant in this case, Robert Wilson, the payments made to informant Wilson have previously been documented and forwarded to the defendants in this case.  The only allegation that has a factual basis is that Mr. Wilson, on at least two occasions, without knowledge by the Government, provided co-defendant Teresa Kebles with personal use quantities of cocaine before and after, but not during, the first purchase of 100 MDMA pills from defendant Michael Kebles on January 14, 2003.   The allegations relating to DEA intervening on behalf of Mr. Wilson with respect to his being stopped or arrested in Las Vegas, Nevada, with a large quantity of drugs are false.  Also, DEA did not intervene in any fashion to obtain a driver's license for Mr. Wilson, nor did they intervene with respect to his arrest and prosecution for a misdemeanor domestic violence offense in Las Vegas, Nevada.

**LEGAL ARGUMENT**

**THIS DEFENDANT IS NOT ENTITLED TO THE AFFIRMATIVE DEFENSES OF DURESS, COERCION OR NECESSITY AS A MATTER OF LAW.**

6. In the case of *United States v. Haney*, 287 F.3d166, 1273 (10th Cir. 2002), vacated upon *en banc* hearing, 318 F.3d 1161 (10th Cir. 2003), the Tenth Circuit addressed the three elements of the affirmative defense of necessity, duress or coercion that must be established by a defendant in this Circuit in order to rely upon this defense:

   (A) The threat of immediate infliction, upon the defendant, of death or [serious] bodily harm;

   (B) The defendant's well-grounded fear that the threat will be carried out; AND

   (C) The defendant's lack of a reasonable opportunity to otherwise avert the threatened harm.

   *Id.,* at 1269-70, *citing, United States v. Glass,* 128 F.3d 1398, 1409 (10th Cir. 1997); *United States v. Scott*, 901 F.2d 871, 873 (10th Cir. 1990) (*Scott* requires "threat of death or **serious** bodily injury").

7. The facts of the *Scott* case are instructive here. In that case, Scott alleged that between August 1987 and January 1988, he made approximately six trips from New Mexico to Scientific Chemical, a chemical supply company

4

    in Humble, Texas on behalf of fugitive co-defendant Mark Morrow.  These chemicals and laboratory items were purchased to supply Morrow's clandestine methamphetamine manufacturing laboratories in New Mexico. Scott alleged at trial that he had purchased the chemicals and lab ware on behalf of Morrow as a result of a well-established fear that Morrow would kill him or members of his family if he did not act as Morrow had directed. Scott further claimed that he did not have any reasonable opportunity to escape the harm threatened by Morrow.  Scott stated that Morrow knew where he and his family lived as well as where his daughter resided. Scott went on to state that he was aware of information linking Morrow to various murders and that Scott did not go to the police with this information as he had allegedly gone to them before on other matters and the police had done nothing.  Scott requested and was denied an instruction on the defense of coercion.

8. The Tenth Circuit affirmed the conviction and held that the trial court had acted properly, holding that only after a defendant has properly raised a coercion defense is he entitled to ain instruction requiring the prosecution to prove beyond a reasonable doubt that he was not acting under coercion when he performed the act or acts charged.  *Scott, supra,* at 873, *citing United States v. Falcon,* 766 F.3d 1469, 1477 (10th Cir. 1985),

      in turn, *citing United States v. Bailey,* 444 U.S. 394, 412-13 (1980).  The evidence introduced must be sufficient as to **all** the elements of the coercion defense before the court will instruct the jury as to such a defense.  *Id. (citations omitted)*. If the evidence is lacking as to any element of the coercion defense, the trial court may properly disallow the defense as a matter of law and refuse to instruct the jury as to coercion. Consequently, a defendant who fails to present sufficient evidence to raise a triable issue of fact concerning the absence of any reasonable opportunity to escape the threatened harm is not entitled to an instruction on the defense of coercion. *Id., citing Shannon v. United States,* 76 F.2d 490, 493 (10th Cir. 1935).

9. In the *Scott* case, the Court held that a significant factor was that Scott's involvement with Morrow covered a period in excess of 125 days.  Also, Scott's personal contact with Morrow was extremely limited during that time frame.  Scott had made no attempt to contact law enforcement authorities or to escape the perceived threats by Morrow during that time. The situation here is markedly similar in that the contact between this defendant and informant Wilson was very limited and intermittent in nature, consisting primarily of telephone contacts between drug purchases.  Also, these contacts occurred over the period from on or about January 14, 2003, through on or about May 28, 2003, a period of

6

      4 ½ months and approximately 134 days. Finally, defendant Kebles made no attempt whatsoever to contact law enforcement authorities, nor does he explain in any fashion why he failed to do so. Thus, his factual proffer fails to satisfy the third element of the coercion or duress defense as a matter of law. **See also** *Glass, supra,* 128 F.3d at 1409.

10. Here the defendant's proffer similarly fails the first element as there has been no factual showing that this defendant was subject to "imminent death or serious bodily harm." The alleged verbal threats that are set forth by the defendant do not satisfy this requirement. The Government doubts that these conversations occurred, characterizing them instead as "eve of trial" fabrications by this defendant nearly 2 ½ years after his arrest. However, assuming *arguendo* only that they did occur, this would not satisfy the first element.

11. The "imminent harm" requirement is related to the concept that justification or excuse is limited to circumstances where an individual has no reasonable opportunity to pursue legal avenues to alleviate the threat, such as reporting the threats of harm to the police. *See United States v. Posada-Rios,* 158 F.3d 832, 874 (5th Cir.1998) (the defense only arises if there is a real emergency leaving no time to pursue any legal alternative). Absent such a requirement, a defendant could, as here, assert a continuing blanket immunity from certain types of criminal conduct,

something the case law has never sanctioned. *In Re: The Diana,* 74 U.S. 354, 361 (1868) ( any rule less stringent than absolute necessity would open the door to all sorts of fraud).

12. Regarding the second element, again, the proffer utterly fails to establish the defendant's well-grounded fear that the threat will be carried out. Further, this must be an objective fear, and not a subjective and illusory, if not fabricated, assertion. According to this defendant's proffer, the alleged threats:

   (A)  were verbal and made primarily over the telephone and not in person;

   (B)  were non-specific and vague as to what might occur if he did not engage in the drug sales here;

   (C)  occurred over an extended period of time of 4 ½ months on an intermittent basis; and

   (D)  did not cause this defendant to contact law enforcement authorities or even prompt him to proffer an explanation as to why he had failed to do so.

13. Further, as set forth above, these allegations by this defendant first came to light during October, 2005, nearly 2 ½ years after his arrest by federal agents on May 28, 2003. This defendant, per his proffer, had no indication that the informant was, in fact, working for the Government at the time of the drug sales in question. Rather, he must have assumed

8

that he had been threatened by a person whom he believed to be a drug dealer. Common sense would dictate that such a person would contact law enforcement authorities at the outset of the receipt of any such threats; in the alternative, he would surely inform law enforcement authorities of this conduct immediately upon his arrest which removed him from the environment in which the alleged threats occurred. The defendant's proffer is incredible as a matter of law. Therefore, and based upon an objective analysis of the second element, this defendant's proffer is insufficient as a mater of law. *See United States v. Meraz-Valeta,* 26 F.3d 992, 995 (10th Cir. 1994) (A defendant's subjective belief as to available alternatives is not determinative); *Cf. United States v. Harper,* 802 F.2d 115, 118 (5th Cir. 1986) (to establish the absence of a legal alternative, a defendant must show that he had actually tried the or alternative or had no time to try it, or that a history of futile attempts revealed the illusionary benefit of the alternative); *United States v. Jankowski,* 194 F.3d 878, 883 (8th Cir. 1999) (subjective belief that going to the police would be futile was not sufficient); *United States v. Wofford,* 122 F.3d 787, 791 (9th Cir. 1997) ("Our cases uniformly require the defendant to seek aid from law enforcement before taking matters into his own hands.")

9

## CONCLUSION

WHEREFORE, and in light of the foregoing, the Government respectfully submits that the defendant is not entitled to a jury instruction on coercion, duress or necessity as a matter of law.

Respectfully submitted this 6th day of February, 2006,

        WILLIAM J. LEONE
        UNITED STATES ATTORNEY


By: *s/ James R. Boma*
     JAMES R. BOMA
     Assistant U.S. Attorney
     U.S. Attorney's Office
     1225 17th St., Suite 700
     Denver, CO  80202
     Telephone:  (303) 454-0100
     Fax:  (303) 454-0401
     E-mail:  james.boma@usdoj.gov
     Attorney for Government

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of January, 2006, I electronically filed the foregoing **GOVERNMENT'S AMENDED RESPONSE TO DEFENDANT'S PROFFER RE DURESS DEFENSE AND MOTION *IN LIMINE* TO PRECLUDE DEFENDANT FROM RECEIVING SUCH A JURY INSTRUCTION AS A MATTER OF LAW** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following e-mail addresses:

Robert John Corry , Jr
robert.corry@comcast.net

 *s/Diana L. Brown*
DIANA L. BROWN
United States Attorney's Office
Legal Assistant to James R. Boma
U.S. Attorney's Office
1225 17th Street, Suite 700
Denver, Colorado 80202
Telephone: 303-454-0358
Fax: 303-454-0401
E-mail:  diana.brown@usdoj.gov

11