IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Criminal Action No. 03-cr-000249-WYD

UNITED STATES OF AMERICA,
                           Plaintiff,

vs.

MICHAEL KEBLES
                         Defendant.

**DEFENDANT MICHAEL KEBLES' SENTENCING STATEMENT**

Comes now the Defendant, Michael Kebles, by counsel John F. Sullivan, III and files his sentencing statement in the above matter.

1) <u>Two Level Enhancement for the Handgun</u>. The United States of America and probation include a two level enhancement under "Specific Offense Characteristic" due to Mr. Kebles' possession of a firearm in his home when the search warrant was served and drugs were found. Mr. Kebles submits that this enhancement should not be applied.

2) Controlling case law in this circuit suggests that the enhancement for the handgun applies if "...the government can prove by a preponderance of the evidence that a weapon was present unless the defendant can show 'it is clearly improbable that the weapon was connected with the offense.' *U.S.S.G. § 2D1.1 cmt. n.3, See United States v. Zavalza-Rodriguez*, 379 F.3d 1182, 1184-85 (10th Cir.1004)." *United States v. Saenz*, 221 Fed.Appx. 773, 776-777 (10th Cir. 2007). *See also United States v. Medina-Cabuto*, 2007 WL 2733719 (Slip Copy)(10th Cir. 2007).

3) The evidence at trial was that the handgun was present. However, the jury specifically found the defendant not guilty of possession of that same firearm in furtherance of a drug

trafficking crime. Moreover, there was no evidence that this weapon was ever used during a drug transaction. Neither the DEA nor the CI ever saw a weapon in Mr. Kebles' possession at any time. It was never brandished to anyone involved in this case. The weapon itself was rusted and there was no evidence it had been recently fired or recently moved from the drawer where it was found. The ammunition from the weapon may have provided some clues as to whether the gun had been recently used or fired but it was inadvertently destroyed by the government during processing.

      4) There was also no evidence found that Mr. Kebles' house was being used as a large scale drug packaging and sales area where it might follow that a weapon could be used to protect the premises. For this and the above noted reasons, the defense respectfully submits that the two level enhancement for the weapon possession not be applied to Mr. Kebles' guideline calculation because it was clearly improbable that the weapon was connected with the offense.

      5) <u>Extra 400 Ecstasy Pills.</u>  The government's sentencing statement and probation also included as relevant conduct an extra 400 ecstasy pills which were not recovered during execution of the search warrant nor were they purchased by the CI. Mr. Kebles objects to the 400 pills being included as relevant conduct and the subsequent additional two levels added on to his guideline calculation because the level of proof of the alleged relevant conduct does not rise to a preponderance of the evidence standard as required by law. *See United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir.2005).

      6) The evidence which was set before the jury was a poor quality audiotape where Mr. Kebles is alleged to have told the CI that he had an additional 400 pills for sale. Since the tape was inaudible it was difficult to determine what Mr. Kebles was saying. The only other evidence of the alleged comment by Mr. Kebles was a quote from the CI. However, at trial the CI had no memory of any such statement nor did he have much of a memory of the drug deal itself. It stands to reason that if the government had great confidence in the existence of the additional pills and that Mr. Kebles actually promised to sell them to the CI, they would have sought an

additional charge of Attempt to Distribute MDMA or Conspiracy to Distribute MDMA which they did not.

7) Therefore, based upon the lack of any quality evidence that Mr. Kebles attempted to distribute an additional 400 ecstasy pills and the lack of any quality evidence that he even possessed an additional 400 ecstasy pills, Mr. Kebles respectfully submits that the additional 102.6 grams of MDMA should not be included in a guideline calculation.  That would reduce the total quantity of MDMA to188.6 grams which would yield a marijuana equivalent of 94.3 kilograms which would start Mr. Kebles at a base offense level of twenty-four.

8) <u>Acceptance of Responsibility</u>.  While Mr. Kebles acknowledges that acceptance of responsibility is not often granted in cases where a defendant goes to trial, he would submit that given his admission to selling drugs to the CI after his arrest and his recent letter to the Court he does understand his actions were improper and accepts responsibility for them.  Should the Court find some acceptance of responsibility from Mr. Kebles it could lower his guideline calculation two levels.

9) <u>Summary</u>.  Mr. Kebles submits that the appropriate starting base offense level under the United States Sentencing Guidelines should be level twenty-four with no specific offense characteristic adjustment.  With a two level reduction for acceptance of responsibility and a Criminal History Category of I, his guideline range of sentence would be 41-51 months.  The Defendant reserves the right to argue for a below-guideline sentence for various reasons at sentencing.

Respectfully submitted this 24th day of October 2007.

                                        s/John Sullivan
                              By: John F. Sullivan III,
                                  155 S. Madison Street, Suite 209
                                  Denver, CO 80209
                                  (303) 748-4343

**CERTIFICATE OF SERVICE**

I hereby certify that on this 24th day of October 2007, true and correct copies of the foregoing **DEFENDANT MICHAEL KEBLES' SENTENCING STATEMENT** were served via ECF upon:

Mr. James Boma, Esq.
Assistant United States Attorney
1225 17th Street, Suite 700
17th Street Plaza
Denver, CO 80202                    s/ John Sullivan