IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff-Appellee, | ) | |
| | ) | |
| vs. | ) | Case # 07-1485 |
| | ) | |
| MICHAEL KEBLES, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |

On Appeal from the United States District Court
for the District of Colorado
The Honorable Wylie Y. Daniel,
D.C. No. 03-CR-000249-WYD

**APPELLANT'S REPLY BRIEF**

ORAL ARGUMENT
REQUESTED

By: John F. Sullivan, III
THE LAW OFFICE OF JOHN F. SULLIVAN, III, P.C.,
155 S. Madison Street #209
Denver, Colorado  80209
(303) 748-4343

_____Attorney for the Defendant-Appellant

APRIL 14, 2008

IN THE UNITED STATES COURT OF APPEALS
FOR THE TENTH CIRCUIT

## TABLE OF CONTENTS

TABLE OF AUTHORITIES.......................................................................................3

DISCUSSION.......................................................................................................4

Mr. Kebles was directly entrapped in that he was improperly induced by a rogue informant who was allowed to act as he desired in order to secure a successful drug transaction. The improper supervision of, and lack of adequate background investigation into, the informant on the part of the government was more than negligent.

CONCLUSION.....................................................................................................17

CERTIFICATE OF SERVICE................................................................................18

CERTIFICATE OF ELECTRONIC SUBMISSIONS...........................................18

APPENDIX A.......................................................................................................19

**TABLE OF AUTHORITIES**

**CASES**

*Headrick v. Rockwell Intern. Corp,* 24 F.3d 1272 (10th Cir.1994)............................9

*In re Riverside Linden Investment Co.,* 945 F.2d 320 (9th Cir. 1991).......................9

*United States v. Garcia,*  182 F.3d 1165 (10[th]Cir.1999)....................................14-15

*United States v. Magallanez,* 408 F.3d  672 (10th Cir.2005)...................................16

*United States v. Ortiz,* 804 F.2d 1161 (10th Cir. 1986)............................................4

*United States v. Ullah,* 976 F.2d 509 (9th Cir.1992)..................................................9

<u>                                                    </u>**DISCUSSION**

<u>                                                    </u>

I.                      **The Government's Improper Inducement**

a.                **Vicarious vs. Direct Entrapment**

The government argued in its brief as it did in trial that "the defense

argument really appears to be an argument of theoretical vicarious entrapment".

Answer Brief, p. 37.  Respectfully, vicarious entrapment is not the theory of the

defense in this case.  If indeed an informant interacted with a target only through

an intermediary that may be a case for vicarious entrapment but that is not what

took place in Mr. Kebles' case.  The evidence is that there was a substantial

amount of direct interaction between the informant and Mr. Kebles.  When Mr.

Wilson used Teresa Kebles, Mr. Kebles' sister,  to facilitate drug transactions he

was using a plea based upon sympathy or friendship in order to have Ms. Kebles

contact Mr. Kebles and help gain Mr. Kebles' trust in Mr. Wilson.

"Governmental inducement make take the form of 'persuasion, fraudulent

representations, threats, coercive tactics, harassment, promises of reward, or pleas

based on need, sympathy or friendship." *United States v. Ortiz,* 804 F.2d 1161*,*

1165(10th Cir.1986)(citations omitted).

An example of Mr. Wilson's  making a plea based upon sympathy or

friendship based upon Mr. Wilson's relationship with Ms. Kebles is Exhibit 15

4

which was a tape of a conversation between Mr. Kebles and Mr. Wilson. ROA

Volume II, pg 253. Teresa Kebles had a substance abuse problem of which both

Mr. Wilson and Mr. Kebles were aware. Mr. Wilson asks Mr. Kebles during the

discussion prior to the third drug deal how Mr. Kebles' sister was doing with her

alcohol problem and about if she is getting treatment. Mr. Kebles was concerned

about his sister and Mr. Wilson feigned interest in Ms. Kebles' situation to garner

sympathy from Mr. Kebles and facilitate the potential drug transaction. Therefore,

it is not vicarious but direct entrapment because Mr. Wilson, an agent of the

government, used improper inducement to consummate a drug transaction when

he improperly played directly upon Mr. Kebles' sympathies for his sister in order

to gain Mr. Kebles ' trust and induce Mr. Kebles to sell him drugs.

### b.        Unsupervised acts of the Informant

Other examples of Mr. Wilson's improper inducement of Mr. Kebles often

occurred when Mr. Wilson was not being properly supervised such as Mr.

Wilson's delivering drugs to targets. The in-court testimony of government

witness Agent Carl Force was as follows:

Q   Okay. And was actually distributing drugs, delivering them?
A   Yes.
Q   To targets?
A   Yes.

ROA Volume II, pgs. 293-4.

Q  And since it says defendants, I assume that's at least two . So we now know that Mr. Wilson has been delivering cocaine to at least three targets.  While under the employ of the DEA.
A   Yeah, I would say that's a fair statement.

ROA Volume II, pg 342.  This is clear evidence that Mr. Wilson was delivering

drugs on his own to targets to facilitate his being able to buy drugs from them

later.  These actions show the great lengths this informant would go to induce a

drug buy even if it meant entrapping the target.

There was also evidence that Mr. Wilson made a large number of phone

calls to induce Mr. Kebles to sell drugs to him.  The frequency of phone calls

could certainly be characterized as harassing.  (Two to three times a week

according to defense witness, Laura Hemborg.  *See* ROA, Volume IV, pg 454).  In

addition, many of  the calls and meetings were unrecorded and Mr. Wilson has

demonstrated that he will go to great extremes to get what he wants and claim

memory loss later on.  *See* Answer Brief, p. 39 fn. 5.

Mr. Wilson even made some calls on his own prior to the first deal which

were unrecorded and done without DEA supervision.  Evidence of these

unrecorded calls support Mr. Kebles' argument that the finder of fact could draw a

reasonable and proper inference that Mr. Wilson's coercive tactics during these

unrecorded phone calls and/or meetings were improper inducement.  It is a fact

that these unrecorded, unauthorized calls and meetings were a violation of his

agreement with the DEA.  Evidence of the unrecorded calls are noted below

during the testimony of Agent Carl Force:

Q.   What was your recollection of what Mr. Wilson told us that day?
A   He said maybe he might have had conversation with Mr. Kebles.
Q   Before the 14th.
A   There -- yes.

ROA Volume II, pg 303.

Q   So we have five calls, total, maybe that were unrecorded and they were
conversations between the informant and Michael Kebles?
A   Correct.

Q   Okay.  Now, there were some meetings that we know of now between Teresa
Kebles and Bob Wilson where drug transactions were discussed, and those
meetings weren't recorded; is that  correct?
A   That's correct.

ROA Volume II, pg 307.  These calls, much like the illegal drug deliveries, again

show that Mr. Wilson would do what it took, even if it was unauthorized, to

induce a potential target to sell him drugs.

In May, 2003, before the search warrant was served, Mr. Wilson tried to set

up his own drug deal with Mr. Kebles  and the DEA did little to stop him nor did

they document Mr. Wilson's actions with reports or taping of the phone calls.  By

not properly supervising their rogue informant the DEA enabled Mr. Wilson to

7

constantly violate the terms of his agreement with the DEA including the section

prohibiting acts of entrapment.  Below is a section of Agent Force's testimony

regarding the proposed drug deal, noted after the fact in an Agent's Note, with Mr.

Kebles which was to take place at the Hooter's Restaurant in Glendale, Colorado:

Q   And the only real mention we have in the report is agent's  note about this
negotiation that happened?
A   Correct.
Q   How many calls did he make, do you know?
A   That day, I don't know.  I'd say more than one.
Q   But there's no reports of that, and again, there's no tapes of that?
A   No, sir.

ROA Volume II, pg 337.

The evidence of the unsupervised proposed deal and the evidence of the

unrecorded calls is in stark contravention to Mr. Wilson's testimony at trial that he

did not do anything without government knowledge.  *See* ROA, Vol. III, at 393.

All of these examples of the government's improper inducement, many of them

unsupervised acts by a rogue informant, show that improper government

inducement in Mr. Kebles ' case was not only improper but pervasive and

extreme.

### c.       Government Negligence v. Misconduct

In its Answer Brief the government stated that "[a]ny mistake of the

Government agent here, in supervising the informant was, at worst a question of

8

negligence,..." Answer Brief, p.38. The problem for Mr. Kebles is that the government was more than negligent both in supervising the informant and in doing a proper background check on the informant and it led to the improper inducement which could have been avoided.

Counsel did address the mishandling of the informant in the Opening Brief. However, counsel does realize that the government negligence issue was not addressed using the example which is to follow. Counsel submits that the Court has the discretion to review an issue in the Reply Brief even if it was not squarely raised in the Opening Brief. *See Headrick v. Rockwell Intern. Corp,* 24 F.3d 1272, 1278 (10th Cir.1994)(noting that the general rule regarding waiver of an issue if not raised in the opening brief is subject to exceptions). One of those exceptions is when an issue is raised in the Appellee's Brief which is the case here when the government claims its errors were due to negligence only. *See In re Riverside Linden Investment Co.,* 945 F.2d 320, 324 (9th Cir. 1991). *See also, United States v. Ullah,* 976 F.2d 509, 514 (9th Cir.1992)("We will review an issue not presented in an opening brief for good cause shown or if failure to do so would result in manifest injustice.")(citation and internal quotation marks omitted.)

The government claimed that Mr. Wilson's reason for becoming an informant for the DEA was that he was tired of seeing people get hurt by drugs

9

and he just had to get away from the life of protecting drug dealers. *See* Answer

Brief, p.6.  He also did not expect any money because he had his own job.  *Id.*

Mr. Wilson's motivation for becoming an informant was an important issue

in trial.  There were various assertions as to why he became an informant.

Defense witness, Julia Rutter testified that Mr. Wilson told her he was working for

the DEA so he could get points off of him.  ROA Volume IV, p. 448.   Mr. Wilson

denied this.  He stated the following during his redirect examination:

 Q   I'd like you to explain why, why you went to the DEA and what -- yeah, what
your reasons were. You weren't interested in the money; what was the motivation
is what I'm asking.
 A   Seeing people hurt.
 Q   What do you mean by that, sir?
 A   Hurt by drugs.

 ROA Volume III, p. 418-9.

These statements led the jury to believe that Mr. Wilson's motivation was

merely to get drugs off the street that were hurting people.  Mr. Kebles submits

that was not the real motivation of Mr. Wilson and it was critical to Mr. Kebles'

receiving proper due process that he would have been allowed to properly cross

examine Mr. Wilson as to his potential biases, interests or prejudices.

The defense found and presented direct evidence of Mr. Wilson's

motivation via his statements to Ms. Rutter.  However, Mr. Kebles also tried to

garner information regarding Mr. Wilson's motivations through the discovery

process. As was demonstrated during trial and during pretrial investigation, Mr.

Wilson had an incredible lack of memory as to critical events. *See* Answer Brief,

p.39, fn 5. The defense did make many efforts pre-trial to answer some of the

questions about Mr. Wilson and what his motivation was for being an informant.

On June 19, 2003 government counsel wrote a letter to Mr. Kebles' prior

attorney stating that there is a record of an arrest for aggravated car theft for a

Robert Mark Wilson with the same birth date as Mr. Wilson but that Mr. Wilson

denied that he was the person arrested. No case file for the arrest was produced

for the defense. That letter is attached as Appendix "A" and was Defense Exhibit

"B" at the sentencing hearing of November 5, 2007. The defense requested on the

record that the government permit inspection of the informant file so that counsel

could view items such as the case initiation report, informant establishment report

and informant deactivation report in an effort, among other things, to determine

the motivation behind Mr. Wilson's becoming an informant and those requests

were denied by the District Court on November 29, 2004. ROA, Vol. X, p. 60.

Current counsel had requested that same file from the government off the record

and that request was denied.

At the sentencing hearing on November 5, 2007 counsel produced two

exhibits (Sentencing Exhibits "A" and "B").  Exhibit "A" was obtained by a

defense witness within a few days of sentencing showing that Mr. Wilson was in

fact the person who was previously arrested for aggravated car theft and confessed

to committing same.  ROA Volume IX, p. 8-25.  The significance of this new

evidence was two-fold.  First, it showed that Mr. Wilson lied to the government

about his prior history  Second, it could explain why Mr. Wilson became an

informant in the first place and corroborates Ms. Rutter's statement quoting Mr.

Wilson as working with the DEA to get points off of him.[1]

At sentencing, counsel made an oral motion for a new trial based upon the

newly discovered evidence regarding the confidential informant, Robert Wilson.

ROA Volume IX, p. 8.  That motion was later denied.  *Id* at p.25

Mr. Wilson made no mention of why he was an informant other than he was

trying to stop people being hurt by drugs which, if true, is honorable and gives his

testimony credence.   However, his lack of memory makes it difficult, without

proper discovery to do an effective cross examination. With the evidence of the

aggravated vehicle theft the defense could have sent its investigator out to

_____

[1] In its Answer Brief, the government itself appears not to believe that the motivation of
Mr. Wilson was what Mr. Wilson stated on the stand.  "He even attempted to tell the defense that
he was an informant because he was a good citizen..... The informant demonstrated why
Government agents try to meet themselves with dealers, and why informant transactions are often
recorded."   Answer Brief, p. 39, fn 5.

interview witnesses or other attorneys to find out if this case or another case were

the "points" which Mr. Wilson had to work off.  However, Mr. Kebles was not

able to obtain the information necessary for an effective cross examination into

Mr. Wilson's bias, interest or motivation through the discovery process because

the government did not turn over important parts of the informant's file.

Mr. Kebles agrees with the government that destroying the ammunition in

this case may have been merely negligent.  However failures to follow procedure

such as improper authorization for eavesdropping on phone calls, failure to tape

all contacts between the informant and targets, failure to adequately investigate the

background of an informant and failure to investigate felonies being committed by

informants in order to secure targets is something altogether different.  These

actions or inactions add further support to Mr. Kebles' argument that he was

improperly induced by a rogue informant to commit these crimes and the

government's lack of adequate supervision or adequate background checks

enabled the informant to do so.   Moreover, by denying Mr. Kebles access to some

of the prior history of the informant the government denied Mr. Kebles the

meaningful ability to confront and cross examine a witness against him.

Finally, even after all the allegations of Mr. Wilson's misconduct had come

to light, and Mr. Wilson was terminated (though Mr. Wilson does not remember

the reason for the termination, ROA, Volume III, p.415) Agent Force drafted a

memo, Exhibit D, ROA Volume III, p.344, stating that Mr. Wilson was to receive

a reward for his considerable contributions in this case.  Agent Force admitted in

trial that when he drafted the memo he knew it not to be true.  Agent Force stated

the following:

Q   The memo says he's going to get a payment depending on the outcome of the
case, you had no intention of making that payment for him, correct?
A   At that time, no.
Q   Okay.  Nor at any time --
A   No.
Q   -- after you found out he was using cocaine?
A   Exactly.
Q   So this memo, then, is not true that on January 26, 2004, it says you intended
to pay the CI.  but you really didn't right?
A   I guess that's, yeah, that's the way it could be construed.

ROA Volume II, pg 371. With all due respect to the government, this testimony is

further evidence that it was more than negligent when the  government enabled the

informant to improperly induce Mr. Kebles to commit the crimes charged then

wrote the false memo in an attempt to cover their tracks.

## II.               Appellant's Lack of Predisposition

"Predisposition to commit a criminal act may be shown by evidence of

similar prior illegal acts or it may be inferred from defendant's desire for profit, his

eagerness to participate in the transaction, his ready response to the government's

inducement offer, or his demonstrated knowledge or experience in the criminal activity." *United States v. Garcia,* 182 F.3d 1165, 1168-9 (10th Cir.1996).

It was undisputed that Mr. Kebles had no prior criminal activity on his record, had a long time, good-paying job which required skill and did not have the things in his house which were listed in the search warrant as indicative of someone in the business of selling drugs for a living. It took several contacts between him and the informant in order to agree to a drug transaction and some of those contacts were unrecorded so it is unknown what sort of inducements were used by the informant. The sheer number of contacts which also included two times where no deal was agreed upon shows that Mr. Kebles was not eager to participate in the transaction nor did he readily respond to the government's offer.

Mr. Kebles had made a good living for years as a contractor and an irrigation specialist. He had led a law abiding life and was happy working for himself. Without the actions of Mr. Wilson he would not have engaged in this behavior and jeopardized everything for which he had worked so hard.

### Relevant Conduct

Finally, there arose an issue at sentencing regarding including as relevant conduct an extra 400 ecstasy pills which were not recovered during execution of the search warrant nor were they purchased by the informant, Mr. Wilson. ROA

15

Volume IX p37-45. Mr. Kebles objected at sentencing and objects now to the 400 pills being included as relevant conduct and the subsequent additional two levels which were added on to his guideline calculation because the level of proof of the alleged relevant conduct did not rise to a preponderance of the evidence standard as required by law. *See United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir.2005).

The evidence which was set before the jury was a poor quality audiotape where Mr. Kebles is alleged to have told Mr. Wilson that he had an additional 400 pills for sale. Since the tape was inaudible it was difficult to determine what Mr. Kebles was saying. The only other evidence of the alleged proposed sale is a quote from Mr. Wilson of which Mr. Wilson had no memory and from the agent who claimed he heard the quote while monitoring the conversation. However, the best evidence is the tape and it is inconclusive. It stands to reason that if the government had great confidence in the existence of the additional pills and that Mr. Kebles actually promised to sell them to Mr. Wilson they would have sought an indictment. Therefore, the District Court erred when it found that the government proved by preponderance of the evidence that Mr. Kebles had promised an additional 400 pills for sale in the future.

# CONCLUSION

Mr. Kebles was entrapped by the government to commit the charged crimes and the District Court erred when it denied the Motions for New Trial and Motions for Judgment of Acquittal.  The government was more than negligent in its handling of the informant who misled the government, acted on his own by providing drugs to targets, made unauthorized contacts with targets, and played upon the sympathies of a law-abiding person in order to consummate a drug transaction.  The government failed to adequately investigate and supervise this informant which contributed to the informant's being able to do what he wanted in entrapping an otherwise unpredisposed Michael Kebles .

Respectfully submitted this the 14th day of April, 2008,

THE LAW OFFICE OF JOHN F. SULLIVAN, III, P.C.,


                s/John Sullivan
_____
By:  John F. Sullivan, III
155 S. Madison Street #209
Denver, Colorado  80209
(303) 748-4343

## CERTIFICATE OF SERVICE

I hereby certify that I have duly served a copy of the Appellant's
Reply Brief  on  the 14th  day of April 2008  by depositing a true and accurate
copy of same into the U.S. Mail postage prepaid and addressed to:

Mr. Michael Kebles #31863-013
Federal Detention Center
9595 W. Quincy Ave
Littleton, CO 80123

Mr. James Boma
Mr. John Hutchins
Assistant United States Attorneys
1225 17th Street, Suite 700
17th Street Plaza
Denver, CO 80202

s/John Sullivan

## CERTIFICATE OF DIGITAL SUBMISSION

All required privacy redactions, if any, have been made and, with the
exception of those redactions, every document submitted in Digital Form or
scanned PDF format is an exact copy of the written document filed with the Clerk.

I certify that the information on this form is true and correct to the best of my
knowledge and belief formed after a reasonable inquiry.

s/John Sullivan

**Appendix A**

U.S. Department of Justice Attachment 3



*John W. Suthers*
*United States Attorney*
*District of Colorado*
*Drug Task Force*

A

---

*1225 17ᵗʰ Street, Suite 700*                    *(303) 454-0100*
*Denver, Colorado 80202*                          *(FAX) 454-0401*

June 19, 2003

JUN 20 2003

Walter L. Gerash, Esq.
1439 Court Place
Denver, Colorado 80202
(Michael Kebles)

Kenneth F. Eichner, Esq.
1776 Lincoln Street, Suite 1010
Denver, Colorado 80203
(Teresa Kebles)

Re:     Supplemental Discovery
        U.S. v. Michael Kebles, et al.
        Case Number: 03-CR-249-D

Dear Counsel:

        Enclosed please find supplemental discovery materials in this matter, which may be
described as follows: Copies of documents, bearing Bates Stamp page numbers **000379** through
**000430.**

        Regarding the informant in this case, Robert Wilson, NLETS shows an arrest for an
individual by the name of Robert Mark Wilson, with the same date of birth. However, Mr.
Wilson denies that he is this individual. Further, although an individual was arrested for
aggravated car theft, that case was ultimately closed without any disposition. In light of this, Mr.
Wilson has no convictions of record and any reference to this arrest which the informant disputes
and which, in any event, resulted in no conviction, would lack a good faith basis. The
Government would seek appropriate sanctions if this matter were introduced in a hearing or at
trial in an improper attempt to impeach his credibility. Please contact the undersigned if you
have any questions in this regard.

Case No. 1:03-cr-00249-WYD   Document 454-3   filed 08/03/10   USDC Colorado   pg 21 of 21
Case: 07-1485     Document: 0101412401     Date Filed: 04/14/2008     Page: 2

Attachment 3

The Government hereby requests reciprocal discovery under Rule 16(b), Fed. R. Crim. P., and further requests that you identify and provide copies of any such materials which are encompassed by the provisions of the rule.

Sincerely,

JAMES R. BOMA
ASSISTANT UNITED STATES ATTORNEY

Enclosure

cc(w/Encl):   S/A Carl Force, DEA, Denver
              S/A Brian Palmer, USCS, HIDTA, Denver

·2