# UNITED STATES COURT OF APPEALS

## TENTH CIRCUIT

—————————————————

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

    v.                         Case No. 07-1485

MICHAEL KEBLES,

    Defendant-Appellant.

—————————————————

## APPELLANT'S *PRO SE*

## SUPPLEMENTAL OPENING BRIEF

—————————————————

On Appeal From
The United States District Court
for the
District of Colorado.
The Honorable Wiley Y. Daniel, District Judge.
District Court Case No. 03-CR-249-WYD

—————————————————

Michael Kebles
Appellant *pro se*
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, New Jersey 08640

—————————————————

ORAL ARGUMENT *NOT* REQUESTED

September 29, 2008

## TABLE OF CONTENTS

STATEMENT OF THE ISSUES......................................................................2

STATEMENT OF THE CASE........................................................................3, 4

SUMMARY OF THE ARGUMENTS.........................................................5, 6

THE ARGUMENTS.........................................................................7, 17

CONCLUSION.............................................................................17

CERTIFICATE OF COMPLIANCE.................................................................18

CERTIFICATE OF SERVICE.......................................................................19

1

## STATEMENT OF THE ISSUES

I.      Whether the Jury did what no rational Jury would have done:  found the

Defendant-Appellant, Michael Kebles, guilty despite overwhelming and indisputable

evidence of his inducement, his non-predisposition, and thus of his entrapment.

Whether the District Court committed reversible error on two occasions:  when it denied

Defendant-Appellant's Motion for Judgment of Acquittal and Motion for New Trial

when it twice denied he was entrapped as a matter of law.

II.     Whether the Jury found the Defendant-Appellant guilty of Count Five,

Possession With Intent to Distribute, on the basis of insufficient evidence.

III.    Whether the District Court improperly added, as relevant conduct,

at the sentencing hearing on November 5, 2007, four hundred putative tablets to the total

number actually distributed to the Informant (DEA Confidential Source) Robert Wilson.

IV.     Whether the District Court improperly denied Defendant-Appellant's

Motion for a New Trial, on November 5, 2007, based upon the discovery of new

evidence, specifically *Brady* material.

2

## STATEMENT OF THE CASE

In November 2007, Defendant's court-appointed trial attorney, Mr. John F.

Sullivan, III, was reappointed to serve as his appellate attorney during the course of

this appeal.  After Mr. Sullivan filed the Appellant' Opening Brief and the Appellant's

Reply Brief, an irreconcilable conflict arose between him and the Appellant, Michael

Kebles, as to the specific bases of this appeal.  On April 30, 2008, Kebles informed the

Tenth Circuit of his intention to conduct his own appeal, in Mr. Sullivan's stead.  That

same day, Mr. Sullivan filed a Motion seeking the Court's permission to withdraw as

appellate counsel in this case.  On May 2, 2008, Circuit Judge O'Brien granted Mr.

Sullivan's Motion to withdraw, declined to appoint a replacement, vacated the oral

argument set for June 19, 2008, and granted Kebles' request to represent himself, *pro se*.

Judge O'Brien further granted Kebles thirty days in which to file a supplemental brief.

The Tenth Circuit subsequently clarified Judge O'Brien's Order regarding a

supplemental

brief to mean an ***opening*** supplemental brief and granted Kebles a deadline of

August 29th, and finally September 29, 2008, by which to file it.

On April 18, 2008, twelve days before Mr. Sullivan's departure from this

case, the attorney for the United States, Mr. John Hutchins, had sent the Clerk of the

Court, Ms. Elisabeth A. Shumaker,  a letter notifying the Court of supplemental

authorities that forbid issues abandoned from the Appellant's Opening Brief from being

included in the Appellant's Reply Brief.  Mr. Hutchins was, of course, correct, until

Appellant was granted permission to represent himself and to file his own *pro se*

3

Supplemental Opening Brief.  The present *pro se* appeal ensued.

4

## SUMMARY OF THE ARGUMENTS

I.       The evidence of Michael Kebles' entrapment was indisputable and superabundant:  during the year 2003, when he was entrapped by the Informant Robert Wilson (a DEA Confidential Source), Kebles was the owner of a thriving construction and remodeling firm known as Choice Improvements, as well as a teacher of Power Yoga in Denver.  His lawful income had never been higher than during the period he was approached by the Informant.  He did not need the money the Informant paid to him. He had no prior criminal record whatsoever.  The undisputed evidence proves he was induced to commit acts he was not predisposed to commit and thus was entrapped as a matter of law.

II.       The jury convicted Kebles of Count Five, Possession with Intent to Distribute seventy-seven tablets, without sufficient evidence.  Kebles' chief accuser, Special Agent Carl Force, told the grand jury one story, then told the trial jury a second, and ended up being surpassed in his fabrications by the prosecutor, Mr. James R. Boma,

who told the Court and jury a third story because there was no evidence of possession with intent to distribute.

III.  The four hundred tablets, added by the District Court to the total number actually distributed, were not, in fact, relevant conduct.  The audio tape on which they were mentioned was inaudible; they were never mentioned again; nor, in fact, distributed to Wilson, nor to anyone else; nor recovered at the Kebles residence, nor ever

5

seen by anyone at any time.  And Agent Force, whose testimony was fraught with difficulties, should not, in the absence of a corroborating witness, be believed with respect to the mythical four hundred tablets.

IV.    At the Sentencing Hearing of November 5, 2007, Mr. Sullivan filed a Motion for a New Trial based upon the discovery of new evidence, which is *Brady* material, which demonstrates that Wilson lied before, during, and after his DEA tenure about his criminal record and his real motives for becoming a DEA Informant.  The District Court improperly denied this Motion for a new trial.  The inclusion of this *Brady* material would indubitably have resulted in Kebles' acquittal.

6

THE ARGUMENTS

## 1.  ENTRAPMENT AS A MATTER OF LAW

When a district court declines to find entrapment as a matter of law, the standard of review is *de novo*.  *United States* v. *Beal*, 961 F.2d 1512, 1517 (10th Cir.1992).

In *United States* v. *Kebles*, the elements of entrapment—inducement and non-predisposition—have been so clearly established that the jury erred in failing to find entrapment as a matter of fact, just as the District Court erred in refusing to find entrapment as a matter of law.  The standard Tenth Circuit definition of inducement comes from the oft-cited case of *United States* v. *Ortiz*, 804 F.2d 1161, 1165 (10th Cir.1986):

> "Inducement" may be defined as government conduct which creates a substantial risk that an undisposed person or otherwise law-abiding citizen would commit the offense.  This definition implicates the obvious question

of whether the defendant was eager or reluctant to engage in the charged

criminal conduct.  Governmental inducement may take the form of

"persuasion, fraudulent representations, threats, coercive tactics,

harassment, promises of reward, or pleas based on need, sympathy or

friendship."  *United States* v. *Burkley*, 591 F.2d 903, 913 & n. 18

(D.C.Cir.1978), *cert. denied* (citation omitted).

With these well-chosen words, the Tenth Circuit in Ortiz explained what

7

"inducement" is not:

> Inducement also will not be shown by evidence that the government agent
>
> initiated the contact with the defendant or proposed the crime.  *Ortiz*, supra,
>
> at 1165.

Still mindful, six years later, of its precise explanation in *Ortiz*, the Tenth Circuit

was just as precise when explaining that inducement **had** been proven in *United States* v.

*Beal*, *supra*, in which the informant had been the "initiator of both transactions."  *Beal*,

*supra*, at 1516.  In *Beal*, there was never any dispute as to inducement.  The Government

itself, in both District Court and Appeals Court, conceded that Beal had been induced by

the informant's seven telephone calls and messages, which the Tenth Circuit called

"persistent".  *Beal* at 1517.  After having been induced, Beal twice sold

methamphetamine to Silva, the informant, but *the* Tenth Circuit observed:

> There is no real dispute that Mr. Silva was the initiator of both transactions.
> Although he stated Mr. Beal may have called him to arrange the
> transactions, he also stated he may have made the calls himself.  Therefore,
> his version was equivocal.  *Beal* at 1516.

The jury found Beal not guilty of the first sale, but guilty of the second:  entrapped as to

8

the first, but not entrapped as to the second.  The District Court thereupon granted Beal a

judgment of acquittal, affirmed by the Tenth Circuit, as to the second.  If Floyd

Dewayne Beal was entrapped, Michael Kebles was certainly entrapped.

On pages 42 through 44 of its Answer Brief, the Government brings forth several

minute fragments of supposed evidence that are supposedly indicative of alleged

predisposition:  the girlfriend's "blanket denials" about the microscopic amount of used

marijuana found at the Kebles residence;  the seventy-seven Ecstasy tablets likewise

found there; the brother, Daniel Kebles, who is a fugitive defendant in an unrelated

Ecstasy case; and Michael Kebles's failure simply to call the police.  For all the jury

knew, the marijuana may well have belonged not to Michael, but to his girlfriend, hence

her "blanket denials".  The only tablets recovered at the Kebles house were the very

ones that Agent Force and Wilson claim were promised to Wilson, as a consequence of

Kebles having been entrapped into acquiring such tablets to distribute to Wilson, his

entrapper. And all of that reminds one that the only illegal magazine discovered at Keith

Jacobson's house was the very one he had purchased as a result of government-

sponsored entrapment, and Jacobson was judged by the Supreme Court to have been

entrapped as a matter of law. *Jacobson* v. *United States*, 503 U.S. 540, 547 (1992). As

for Daniel Kebles, the jury, at the District Court's insistence, never heard his name. And

as for Michael Kebles' alleged failure simply to call the police when first approached by

Wilson, Mr. Hutchins can cite no case in entrapment history wherein the defendant or

appellant was deemed to have been predisposed and thus not entrapped for having failed

9

to summon the police. Indeed, no such case exists precisely because the entrapment

defense was designed to protect law-abiding, un-predisposed citizens *from* overzealous

police.

Finally, the Appellant hereby repudiates each and every argument contained in his

former counsel, Mr. Sullivan's, Opening Brief or Reply Brief that suggests the

Appellant, Michael Kebles, was vicariously entrapped by his sister, Teresa Kebles. The

theory of vicarious entrapment is an invalid legal doctrine that has been unanimously

rejected by every one of the appellate circuits, including the Tenth, and is rejected by

this Appellant. It has no place in the entrapment defense and no place in this appeal.

CONCLUSION

The Appellant, having established entrapment as a matter of law, requests that his convictions on Counts One, Two, Three, and Four of the Superseding Indictment be overturned and reversed.

## II.  CONVICTION ON COUNT FIVE WITHOUT SUFFICIENT EVIDENCE

On August 21, 2007, the Appellant Michael Kebles was convicted of Count Five of the Superseding Indictment:  possession with intent to distribute seventy-seven Ecstasy tablets discovered at his house on May 28, 2003.   The Court of Appeals reviews

10

the record for sufficiency of the evidence *de* novo. Evidence is sufficient to support a conviction if a reasonable jury could find the defendant guilty beyond a reasonable doubt, given the direct and circumstantial evidence along with reasonable inferences therefrom, taken in a light most favorable to the government." *United States* v. *Wilson*, 107 F.3d 774, 778 (10th Cir. 1997).   To sustain Defendant's conviction of possession with intent to distribute under § 841(a), the Government's evidence must be sufficient to persuade the jury beyond any reasonable doubt that Defendant (1) possessed the controlled substance; (2) knew he possessed the controlled substance; and (3) intended to distribute the controlled substance. See United States v. McKissick, 204 F.3d 1282, 1291 (10th Cir. 2000).  With regard to the seventy-seen tablets discovered at Kebles's

house, the first and second requirements were satisfied, but not the third.  In a vain,

sarcastic attempt to meet the third requirement, Mr. James R. Boma, Assistant U.S.

Attorney, told the jurors:

> "He [Kebles] claimed this was personal use.  That is absolutely ludicrous.
> A dosage unit is at most one tablet, per Agent Force's testimony.  If you
> took 70 pills of this, they would be outfitting you for a body bag by
> nightfall.  No way.  He sold three time before this.  He came up with the
> story yet again, no, that was for personal use, I was going to take all these
> 70 pills."  Trial Transcript, pp. 669-70.

11

Mr. Boma's legal-pharmacological principle, if applied exactly as he formulated it,

would mean that every otherwise law-abiding citizen who possesses seventy or more

Bayer aspirin is *ipso facto* guilty of possession with intent to distribute because the

immediate consumption of all seventy tablets would prove fatal.

In *United States* v. *Moore,* 42 Fed Appx 394 (10th Cir.2002), Moore challenged

the sufficiency of the evidence on the charge of possession of marijuana with intent to

distribute.  Although the Government presented no "direct evidence of distribution", it

did provide "several pieces of circumstantial evidence from which the jury could

reasonably infer that Moore intended to distribute marijuana.  The Government found

246 grams of marijuana in various locations in Moore's house.  They also found scales,

large quantities of plastic baggies, and a ledger.  A former narcotics officer testified that

all of these items were associate with distribution.  Based on this evidence, a rational

jury could find beyond a reasonable doubt that Moore intended to distribute marijuana."

No such indicia of distribution were discovered at Kebles' house.


CONCLUSION

The Appellant, having demonstrated insufficient evidence of possession with

intent to distribute, requests that his conviction on Count Five be overturned and

reversed.

III.  FOUR HUNDRED TABLETS NOT RELEVANT CONDUCT


12

On November 5, 2007, the District Court added four hundred uncharged, unseen,

undistributed tablets as relevant conduct for the purpose of calculating the Appellant's

sentence.  The District Court must calculate drug quantities for sentencing purposes by a

preponderance of the evidence, and the Tenth Circuit reviews the drug quantity

calculation under a clearly erroneous standard.  *United States* v. *Ortiz*, 993 F.2d 204,

207 (10th Cir.1993).  Because the audio tape of the conversation in question was

inaudible, and Wilson had no memory of the four hundred pills Kebles allegedly offered

to sell him on April 2, 2003, the District Court decided to rely upon the memory of

Special Agent Force, who was supposedly monitoring the highly inaudible conversation between Kebles and Wilson.  Force provided no evidence that the same conversation that was inaudible on audio tape was actually overhead by him.  Force provided no indicia of reliability, and the District Court erred in supposing Force's tainted memory provided a preponderance of evidence for including the four hundred unseen, unsold, un-recovered tablets as relevant conduct.

## CONCLUSION

The four hundred tablets did not meet the preponderance of evidence standard, and the District Court's decision to include them for sentencing was clearly erroneous. The Appellant requests the Court of Appeals order that he be resentenced according to a new drug quantity calculation, minus the putative four hundred tablets.

13

## IV.  NEW TRIAL BASED UPON *BRADY* MATERIAL

Although the Tenth Circuit generally reviews the denial of a motion for a new trial for an abuse of discretion, it will review *de novo* claims that the prosecution violated *Brady* v. *Maryland*.  *United States* v. *Hughes*, 33 F.3d 1248, 1251 (10th Cir.1994).

At the Sentencing Hearing held on November 5, 2007, Appellant Michael Kebles' attorney, Mr. John F. Sullivan, III, submitted a Motion for a New Trial based upon

*Brady*

material that had been withheld before, during, and after the trial by the Government,
specifically by the Assistant U.S. Attorney, Mr. James R. Boma.  The District Court
denied the Motion.

In *Brady*,  the Supreme Court held that "the *suppression* by the prosecution of
evidence favorable to an accused upon request violates due process where the evidence
is material either to guilt or to punishment, irrespective of the good faith or bad faith of
the prosecution." *Brady*, 373 U.S. at 87; see *Kyles* v. *Whitley*, 115 S.Ct. 1555, 1564
(1995).  On July 17, 2003, Mr. Boma signed a document with Appellant's counsel in
which he agreed to provide the defense with all of the *Brady*, *Giglio*, and *Bagley*
material to which  defense counsel was legally entitled.  In Brady, the Supreme Court
held that "the suppression by the prosecution of evidence favorable to an accused upon
request violates due process where the evidence is material either to guilt or to
punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373
U.S. at 87; see *Kyles* v. *Whitley*, 115 S.Ct. 1555, 1564 (1995).  In *Banks* v. *Reynolds*, 54
F.3d 1508 (10th Cir.1995), the Tenth Circuit said:   "In order to establish a *Brady*
violation, a ... petitioner

14

must show that: (1) the prosecution suppressed evidence; (2) the evidence was favorable
to the accused; and (3) the evidence was material to the defense. *Fero* v. *Kerby*, 39 F.3d
1462, 1472 (10th Cir.1994), *cert. denied*, 115 S.Ct. 2278 (1995); *United States* v.

*DeLuna*, 10 F.3d 1529, 1534 (10th Cir.1993).

In this case, there is no doubt whatsoever that the prosecution, headed by Mr.

Boma, suppressed evidence.  On June 19, 2003, he sent Kebles' attorney, Mr. Walter L.

Gerash, a letter stating:

> Regarding the informant in this case, Robert Wilson, NLETS shows an arrest for
>
> an individual by the name of Robert Mark Wilson, with the same date of birth.
>
> However, Mr. Wilson denies that he is this individual.  Further, although an
>
> individual was arrested for aggravated car theft, that case was ultimately closed
>
> without any disposition.  In light of this, Mr. Wilson has no convictions of record
>
> and any reference to this arrest which the informant disputes and which, in any
>
> event, resulted in no conviction, would lack a good faith basis.  The Government
>
> would seek appropriate sanctions if this matter were introduced in a hearing or at
>
> trial in an improper attempt to impeach his credibility.

In fact, the individual arrested for aggravated car theft was Robert Mark Wilson,

the selfsame informant in this case.  He and the arrested individual had the identical date

of birth and identical Social Security number because they are one and the same

individual.  This evidence was unquestionably favorable to the accused.  And the

15

evidence was material to the defense because it proved Wilson lied to Boma and Force

about his own well-documented identity, which further proved that Boma and Force

were guilty of a kind of fatuity that prevented them from properly reading a criminal report and connecting it to their own informant, or guilty of knowingly cooperating with Wilson in this deception that he perpetrated on the defense, the jury, and the District Court.

In *United States* v. *Bernal-Obeso*, 989 F.2d 331, 336 (9th Cir. 1993), the Ninth Circuit wrote:

> If he [the informant] would lie to the DEA to get his well-paying job, why would he not lie to a jury about the activities of his quarry to keep it, or so goes the argument.
>
> Evidence of such a lie might be equivalent to the proverbial smoking gun.  All the other evidence used by the defense to punch holes in Cabrera-Diaz's [informant's] credibility amounted only to circumstantial reasons why Cabrera-Diaz might alter the truth to continue to feather his own nest.  A lie would be direct proof of this concern, eliminating the need for inferences.  *See United States v. Brumel-Alvarez*, 976 F.2d 1235, 1244 (9th Cir.1992) ("Evidence that [the informant] lied during the investigation. . .would be relevant to his credibility and the jury was entitled to know of it.")

16

CONCLUSION

Because the deliberate suppression of this Brady evidence did irreparable harm to the Appellant's trial, the District Court erred in denying the Motion for a New Trial. Consequently, the Appellant, Michael Kebles, requests a new trial.

## STATEMENT REGARDING ORALARGUMENT

In his Order dated May 2, 2008, Circuit Judge O'Brien ordered this matter submitted on the briefs, without oral argument, which had been previously scheduled for June 19, 2008, but was vacated in conformity with his Order.

Respectfully submitted this twenty-ninth day of September, 2008.

Michael Kebles
Appellant *pro se*
F.C.I. Fort Dix
P.O. Box 2000
Fort Dix, New Jersey 08640

17
CERTIFICATE OF COMPLIANCE

As required by Fed. R. App. P. 32(a)(7)(C), I hereby certify that this brief is proportionally spaced and contains exactly **3,586** words.  I relied upon my computer to obtain the correct count.

I hereby certify that the information on this Certificate is true and correct to the best of my knowledge and belief, which were formed after conducting a reasonable inquiry.

Dwane D. Davis
4535 Garland Street
Wheat Ridge, Colorado 80033

## CERTIFICATE OF SERVICE

     I hereby certify that I have served a copy of the foregoing Appellant's *Pro Se* Supplemental Opening Brief upon the attorney for the Plaintiff, the United States of America, on this twenty-ninth day of September, 2008, by depositing a true, correct, and accurate copy thereof into the United States mail, First Class postage prepaid, and addressed to the following:

Mr. John Hutchins
Assistant United States Attorney
District of Colorado
Appellate Division
1225 Seventeenth Street, Suite 700
Seventeenth Street Plaza
Denver, Colorado 80202

Dwane D. Davis
4535 Garland Street
Wheat Ridge, Colorado 80033

19